# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARSENIO LUIS BACA | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-07-265-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Arsenio Luis Baca requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show he does not retain the residual functional capacity (RFC) to perform his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work he can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 6, 1942, and was 64 years old at the time of the most recent administrative hearing. He completed the tenth grade and has previously worked as a driver leasing specialist. He alleges he has been unable to work since November 1, 1995, because of ischemic heart disease and Parkinson's disease.

## Procedural History

On February 5, 2004, the claimant filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 34, which application was denied. The claimant maintained insured status through December 31, 2000. ALJ Jeffrey Wolfe conducted a hearing and determined that the claimant was not disabled on March 19, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. He found that the claimant's ischemic heart disease was a medically determinable impairment, but it was not a severe impairment "that significantly limited [the claimant's] ability to perform basic work-related activities for 12 consecutive months." (Tr. 16).

**Review**

The claimant contends that the ALJ erred: (i) by finding the claimant's impairments were not severe at step two; and, (ii) by failing to discuss the RFC of the claimant's treating physician Dr. Paul Bean, M.D. The Court finds the claimant's contentions persuasive.

The record reveals that the claimant was having heart problems as early as November 1994 when he was admitted to the hospital with a myocardial infarction (Tr. 110). He suffered a second heart attack in February 1995 (Tr. 109, 225). The claimant began seeing Dr. Bean in December 1999, and at that time, Dr. Bean noted the claimant's blood pressure was elevated and that he was experiencing symptoms of fatigue and shortness of breath on exertion, some swelling in his extremities, and bloating (Tr. 161-64). However, a chest X ray in January 2000 did not reveal active cardiac or pulmonary disease (Tr. 199). By October 2000, the claimant was doing well, *i. e.*, his blood pressure and cholesterol were being controlled with medication (Tr. 158). In April 2001, Dr. Bean referred the claimant to Dr. William Knubley, M.D., because of tremors in his hands. The claimant was having problems using his hands for fine motor movements with the problem worsening over the past six months. He also had noticed some difficulty with mumbling and drooling. Dr. Knubley assessed the claimant with a "probable essential tremor with no other obvious etiologies, probably mild." The claimant declined treatment at that time and was told to return in one year (Tr. 155-57).

At an appointment with Dr. Bean in June 2002, the claimant's blood pressure had elevated again as well as his glucose level (Tr. 151). By February 2003, the claimant

reported no chest pain or discomfort but his blood pressure still was elevated (Tr. 144). In August 2003, the claimant reported some speech problems, intermittent drooling, and some shaking of the right arm. Dr. Bean again referred him for a neurology consult, this time with Dr. Janice Keating, who suspected the claimant suffered from early Parkinson's disease after examining him (Tr. 133-37). In September 2003, the claimant was noted to be suffering from hypertension, coronary artery disease with single-vessel disease (but no recurrent symptoms of chest pain) (Tr. 138). By November 2003, the claimant was reporting left-sided chest pain, headache, and numbness and tingling down the hand. Because the claimant's chest X ray showed no active cardiac or pulmonary disease and the claimant's EKG showed no change, Dr. Bean concluded the pain was probably musculoskeletal in nature (Tr. 131, 191, 193). At the claimant's appointment in April 2004, Dr. Bean indicated that although the claimant did not currently have symptoms of chest pain, he had not been able to work since he suffered two heart attacks in the 1990s. He noted the claimant was severely limited because of his heart condition and had not been able to maintain employment or travel because of it (Tr. 125). In June 2005, Dr. Bean noted that the claimant's recent stress test "showed fairly good perfusion of the heart[,] (Tr. 251), and by October 2005, the claimant's symptoms of heart disease were doing "fairly well." (Tr. 245).

Dr. Bean also completed a physical medical source statement for the claimant in October 2005 based on the claimant's diagnoses of coronary artery disease, Parkinson's disease, herniated lumbar disc, and diabetes mellitus. He determined that the claimant could sit for two hours during an eight-hour day but only 15 minutes continuously; stand for two

hours during an eight-hour day but only 30 minutes continuously; and walk for two hours during an eight-hour day but only 30 minutes continuously. The claimant could only walk or stand for a combined total of three hours per eight-hour day. He could occasionally lift and/or carry one to five pounds, but never any more than that. He could not use either hand for repetitive actions such as simple grasping, pushing and/or pulling, or fine manipulation, and he could not use his feet for operating foot controls. Dr. Bean determined the claimant could never squat, climb, reach above head, crouch, or kneel, but he could occasionally bend, crawl, and stoop. With regard to environmental factors, the claimant could occasionally drive automotive equipment and be exposed to noise, but he could not tolerate exposure to unprotected heights, marked temperature changes, or exposure to dust, fumes, and gases. He could not be around moving machinery. Dr. Bean concluded that the claimant would need to take unscheduled breaks during an eight-hour day and would likely be absent because of his condition more than four days per month (Tr. 210-12). In August 2006, Dr. Bean completed a second physical medical source statement. It included the same findings as the October 2005 statement, except Dr. Bean added that "[t]he aforementioned conditions and limitations were in existence to the extent and degree indicated on or before December 31, 2000." (Tr. 213-15).

The ALJ explicitly found that the claimant's coronary artery disease was not a severe impairment (and made a more implicit finding that his Parkinson's disease was not severe) prior to the expiration of his insured status on December 31, 2000 (Tr. 16-20). But in reaching his conclusions, the ALJ made no mention of the opinions expressed by Dr. Bean

on the medical source statement from October 2005, and more importantly, on the statement he completed in August 2006, on which Dr. Bean indicated that the claimant's various functional limitations were in existence "on or before December 31, 2000." (Tr. 215). The ALJ's failure to discuss Dr. Bean's opinions is problematic for three reasons.

First, although the Commissioner observes that an impairment that arises or reaches disabling severity after the expiration of the claimant's insured status will not support a finding of disability, *see, e. g., Potter v. Secretary Health & Human Services*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) ("[T]he relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status."), the evidence of the claimant's condition *after* the termination of insured status still may be relevant to the existence or severity of an impairment arising *before* termination. *See, e. g., Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker,* 712 F.2d 1278, 1282 n.4 (8th Cir. 1983); *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir. 1981); *Poe v. Harris,* 644 F.2d 721, 723 n.2 (8th Cir. 1981); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 41-42 (2d Cir. 1972); *Berven v. Gardner,* 414 F.2d 857, 861 (8th Cir. 1969). *See also Nagle v. Commissioner of Social Security*, 1999 WL 777355, at *1 (6th Cir. Sept. 21, 1999) ("Evidence relating to a time outside the insured period is only minimally probative, but may be considered to the extent it illuminates a claimant's health before the expiration of his insured status.") [unpublished opinion] [internal

citations omitted], *citing Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988), *citing Martonik v. Heckler,* 773 F.2d 236, 240-41 (8th Cir. 1985) (discussing *Bastian*). Here, Dr. Bean's opinions on the medical source statements are clearly relevant because he concluded that the functional limitations he assessed were in existence on or before December 31, 2000, *i. e.*, the expiration of the claimant's insured status.

Second, the ALJ is required to discuss Dr. Bean's opinions on the medical source statements even if he intends to reject them. *See, e. g., Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. § 404.1527(d), although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [emphasis added], *citing Goatcher v. Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). *See also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Dr. Bean's opinions are of even more significance because he was the claimant's treating physician during the relevant time period. *See, e. g., Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). At a minimum, the ALJ should have discussed Dr. Bean's opinions and considered whether they established that the claimant was suffering from a severe impairment *before* the termination of his insured status.

Finally, the Commissioner argues that the ALJ's step-two decision is supported by evidence in the record. But it is not for a reviewing court to provide a rationale for the ALJ's decision. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("[T]he magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."), *citing Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-169 (1962); *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. The ALJ must consider Dr. Bean's opinions himself and then supply the reasons for rejecting them.

Accordingly, the decision of the Commissioner must be reversed and the case remanded for proper analysis by the ALJ of the opinions expressed by Dr. Bean on the medical source statements. If the ALJ finds that the claimant *did* suffer from a severe impairment prior to the expiration of his insured status, he should proceed with the remaining

steps of the sequential analysis, *i. e.*, determine whether the claimant's condition meets a listing at step three; assess the claimant's residual functional capacity and whether he can perform his past work at step four; and if necessary, determine whether the claimant can perform any other work at step five.

**Conclusion**

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 30th day of June, 2008.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**